### ELIPHALET WOOD, APPELLANT, *v.* VALENTINE L. LARY AND OTHERS, RESPONDENTS.

*Preferred stock in a corporation — right to pay dividends, in the form of bonds of the corporation, where the profits have been used in the betterment of the corporate property.*

In this action, brought for the purpose of obtaining the cancellation of a mortgage made by the defendant railroad company to the defendants Gay and De Forest, as trustees, it appeared that the Hackensack and New York Railroad Company, and the Hackensack and New York Extension Company, two corporations created under the laws of the State of New Jersey, were, prior to the 1st day of March, 1873, consolidated under the name of the New Jersey and New York Railway Company, and owned a railway running through portions of the States of New Jersey and New York; that subsequently, and about March 1, 1873, the consolidated company issued 12,000 bonds for $1,000 each, known as its gold bonds, and to secure the payment of the same executed a mortgage upon its entire franchise and property; that on and prior to April, 1880, the plaintiff was the owner and holder of twenty of said bonds.

Subsequently, and prior to January, 1882, a plan of reorganization of said consolidated company, the New Jersey and New York Railway Company, was assented to by the plaintiff and a large majority of the holders of said gold bonds, and of other bonds issued prior thereto by the two railroad companies which had been consolidated as above mentioned. In pursuance of such arrangement the

railroad, with its franchises and property, was sold under judicial proceedings, instituted to foreclose the mortgages securing such prior bonds, and the mortgaged premises were purchased by a purchasing committee, who thereafter conveyed the same to the defendant, the New Jersey and New York Railroad Company.

Under the plan of reorganization there was to be issued preferred stock entitled to dividends not to exceed six per cent, payable semi-annually, prior to the payment of any dividend upon the common stock hereinafter mentioned, said preferred stock to retain the entire voting power for the election of directors and managers of the company until such time as there should have been declared and paid six consecutive semi-annual dividends of three per cent each out of the net earnings of the road. The certificates for the preferred stock stated that the same was "entitled to dividends not to exceed six per cent, payable semi-annually, not cumulative, whenever in any year the net earnings, after payment of all interest charges, shall suffice for the payment thereof."

The consolidation agreement also contained an agreement for the issuing of common stock, and such common stock was issued and exchanged for the gold bonds held by the plaintiff, who had ever since been, and at the time of the commencement of this action was, a holder of such common stock.

At a meeting of the directors of the road, in February, 1885, it appeared that there had been expended for construction and betterments of the road since the reorganization upwards of $55,000, which amount would otherwise have been payable in dividends to the preferred stockholders from year to year. At such meeting it was resolved that a dividend of six per cent be declared upon the preferred stock for the four years ending May 1, 1885, and that a further dividend of one per cent be declared on said stock for the six months ending November 1, 1885; both dividends, amounting in the aggregate to less than the amount expended for construction and betterments, to be paid in bonds of the company, bearing interest secured by a mortgage in an amount not exceeding $100,000. At the time of the passage of said resolution and the issue of said bonds the amount of said net earnings was not in hand in cash, but was represented by new property in addition to and in excess of the property in existence at the time of the reorganization, the cost and value of such new property exceeding the amount of such dividends.

*Held,* that the railroad corporation might lawfully issue to its stockholders bonds, in lieu of cash dividends, to represent the earnings of the company which had been used in the construction and betterment of its railroad.

*Williams* v. *Western Union Telegraph Company* (93 N. Y., 162); *New York, Lake Erie and Western Railroad Company* v. *Nickals* (119 U. S.,, 296) followed.

That the right of the preferred stockholders to dividends did not depend upon their declaration by the board of directors, and that such right was not lost by the fact that the board of directors did not declare a dividend each year, provided that the earnings of the railroad in each year, over and above its expenses, were sufficient to pay such dividends.

APPEAL by the plaintiffs from a judgment, entered upon the trial of this action at the New York Special Term, dismissing the complaint.

The action was brought by the holder of certain shares of the common stock of the New Jersey and New York Railroad Company against the directors of said company, the trustees of a mortgage made by said company and the company itself, asking that a mortgage issued by said company be declared void and of no effect, and that the bonds sought to be secured thereby, be delivered up for cancellation, and that the railroad company be enjoined from issuing any additional bonds under the said mortgage or deed of trust mentioned in the complaint.

*J. C. Ten Eyck*, for the appellant.

*R. W. De Forest*, for the respondent, the New Jersey and New York Railroad Company.

*Charles W. Gould*, for the respondent, trustees.

*Charles C. Deming*, for the respondent, Lary et al.

VAN BRUNT, P. J.:

Upon the trial of this action no evidence was offered except some informal proof, and therefore the plaintiff's right to recover depends upon those allegations in his complaint which have been admitted by the answers of the defendants. The following facts appear to be admitted by the pleadings and established by the evidence. That the Hackensack and New York Railroad Company and the Hackensack and New York Extension Company, corporations created under the Laws of the State of New Jersey, were previous to the 1st of March, 1873, consolidated under the name of the New Jersey and New York Railway Company, and owned and possessed a railway running through portions of the States of New Jersey and New York. That subsequently and on or about the 1st of March, 1873, the consolidated company duly made and issued 1200 bonds for $1,000 each, known as its gold bonds and to secure the payment of the same duly executed to the New York Loan and Trust Company, as trustee, a mortgage bearing date this last mentioned day upon all and singular, its entire franchises and property; that prior to April, 1880, the plaintiff was the owner and holder of twenty of said bonds, amounting to $20,000 par value. Subsequently thereto and prior to January, 1882, a plan of reorganization

of said New Jersey and New York Railroad Company, bearing date the 1st of March, 1880, was assented and subscribed to by the plaintiff and by a large majority of the holders of said gold bonds and of other bonds issued prior thereto by the said two railroads consolidated as above mentioned. Subsequent to the said 1st of March, 1880, in pursuance of said plan of reorganization, the said railroad with its franchises and property, were sold by judicial proceedings instituted for the foreclosure of the mortgages securing the said prior bonds, and said mortgaged property was purchased by the purchasing committtee named in said plan of reorganization, who thereafter conveyed the same to the defendant, the New Jersey and New York Railroad Company. By said plan of reorganization there was to be issued preferred stock, not to exceed in amount the sum of $800,000, entitled to dividends, not to exceed six per cent, payable semi-annually, prior to the payment of any dividend upon the common stock thereinafter mentioned; said preferred stock to retain the entire voting power for the election of directors and managers of the road until such time as there should have been declared and paid six consecutive semi-annual dividends, of three per cent each, out of the net earnings of the road.

The form of said certificate of said preferred stock is as follows:

" This certifies that                    is entitled to                    shares of preferred stock of the New Jersey and New York Railroad Company, transferable only on the books of the company, in person or by attorney, on the surrender of this certificate. This certificate is issued, received and held subject to all the terms and conditions of the certificate of incorporation of this company, and is entitled to dividends, not to exceed six per cent, payable semi-annually, not cumulative, whenever in any year the net earnings, after payment of all interest charges, shall suffice for the payment thereof."

The said agreement also contained a provision for the issuing of common stock. Under said agreement there had been issued to the plaintiff 240 shares of said common stock in exchange for said gold bonds, and the plaintiff has ever since been and is now the holder thereof. The said reorganized railroad has ever since been, and still continues to be, in the sole control of the holders of the preferred

stock and the plaintiff and other holders and owners of common stock have had no vote in the election of the directors or managers of the company; and such holders of said preferred stock hold the said railroad, its property and franchises, subject to the terms and provisions of said reorganization agreement.

At a meeting of the board of directors of said railroad company on or about the 23d of February, 1885, there having been expended for construction and the betterment of the road since the reorganization upwards of $55,835.25, which amount would have been otherwise payable in dividends to the preferred stockholders from year to year, it was resolved that a dividend of six per cent be declared upon the preferred stock of the company for the four years ending May 1, 1885, and that a further dividend of one per cent be declared on said stock for the six months ending November 1, 1885, both dividends to be paid in bonds of the company bearing interest from January 1, 1886, at the rate of five per centum, payable semiannually, to be secured by a mortgage on the property and franchises of the company. This mortgage was thereupon executed to secure bonds not exceeding $100,000 in amount, and bonds to the amount first above named have been issued to and received by the preferred stockholders in payment of said dividends in lieu of cash. At the time of the passage of said resolution and the execution of said mortgage and the issue of said bonds, the amount of said net earnings was not in hand in cash, but was in the hands of the corporation as new property in addition to and in excess of the property received by it at the time of the reorganization, the cost and value of which new property exceeded the amount of such dividends. The individual defendants in this action were at that time directors of the said New Jersey and New York Railroad Company and did then control and still control the company, and the said corporation has failed to take any step to redress the alleged wrong of the plaintiff, who claims in this action the cancellation of said mortgage as void and the cancellation of the bonds issued as aforesaid. The question presented therefore for decision is whether a railroad corporation may issue to its stockholders bonds in lieu of cash dividends, to represent the earnings of the company which have been used by the company for construction and the betterment of its railroad and property.

It is urged upon the part of the appellant in the first place that no such right exists; and, further, that the certificates of stock show that the right of the preferred stockholders to dividends over that of the holders of common stock was not cumulative; and, therefore, this provision of the certificate was violated in the declaration at one time of dividends for four years.

That a corporation has the right to issue its bonds to represent property which might properly have been divided among its shareholders as dividends seems to be expressly recognized in the case of *Williams* v. *Western Union Telegraph Company* (93 N. Y., 162). It is true that in that case the question involved the right of the corporation to issue unissued stock which it had, as a stock dividend to its stockholders, to represent property which had been acquired by the payment of money which was properly applicable to the payment of dividends. In that case it is said: " If it can issue stock in payment of property to be obtained by it as part of its capital, for its legitimate uses, why may it not issue stock to its stockholders in payment for property in effect purchased of them and added to its permanent capital, and which they relinquish the right to have divided. So long as every dollar of stock issued by a corporation is represented by a dollar of property no harm can result to individuals or the public from distributing the stock to the stockholders."

The court further say: " The company had made surplus earnings which it could have divided, but instead of dividing them it had invested them in property to facilitate and enlarge its business, and such property was found to be worth ($15,526,590) the par value of the stock which had been issued. That sum constituted its surplus. It was commingled with the other property of the company and used for corporate purposes. But it was not beyond the reach of the dividend making power of the directors. They could reclaim it for division among the stockholders and, if practicable, convert it into cash for that purpose. They could borrow money on the faith of it and divide that. They could issue to the stockholders certificates of indebtedness, redeemable in the future, representing their respective interests in such surplus, thus, in effect, borrowing the same of the stockholders. Desiring to use the surplus and add it to the permanent capital of the company, and having lawfully created shares of stock, they could issue to the stockholders such

shares to represent their respective interests in such surplus. In doing these things no law would be violated, the capital would be kept intact, and no stockholders or creditors would have any legal right to complain. * * * When a corporation has a surplus, whether a dividend shall be made, and, if made, how much it shall be and when and where it shall be payable, rest in the fair and honest discretion of the directors uncontrollable by the courts. There is no statute which requires dividends in telegraph companies or in companies generally to be made in cash. Whether they shall be made in cash or property must also rest in the discretion of the directors. There is no rule of law or reason founded upon public policy which condemns a property dividend. The directors could convert the property into cash before a dividend and divide that. So the stockholders can take the property divided to them and sell it and thus realize the cash. Within the domain of law it can make no material difference which course is pursued."

The reasoning of the court in that case seems to make it clear that there is no distinction between the issuing of obligations of the company for earnings which have been devoted to the betterment of the property of the company and the issuing therefor of the stock of the company which remains in its treasury. It is held by the court to be a loan of money to the extent of the dividends earned by the stockholder to the corporation, and that the corporation has a right to issue its stock or its evidence of debt. And if the corporation has a right to issue its evidence of debt to represent such loan of money, it has the same right to secure the same by a mortgage upon its property that it would have, had such money been borrowed without relation to the question of dividends.

But it is urged that the certificate being non-cumulative, the directors had no right to declare a lump dividend for four years. If there had been any discretion vested in the directors as to whether they should divide with the preferred stockholders these surplus earnings as dividends, the position would have been entirely correct and in consonance with the rule laid down by the United States Supreme Court in the *Railroad Company* v. *Nickals* (119 U. S. R., 296). In that case the holders of the preferred stock were entitled to a non-cumulative dividend of six per cent in preference to the payment of any dividend on the common stock, but depend-

ent upon the profits of each particular year or as declared by the board of directors. It was held by the court below, that the right to a dividend in each year was absolutely secured to preferred stockholders and that such was the contract between the company and preferred stockholders, which the court was not at liberty to disregard. Upon appeal, however, the court held that there was nothing in this language which necessarily deprived the directors of the discretion with which managing agents of corporations are usually invested when distributing the earnings of the property committed to their hands, and that the words "as declared by the board of directors" did not qualify the words "dependent upon the profits for each year," but that they should rather be. read in connection with the preceding words "non-cumulative dividends at the rate of six per cent per annum in preference to any dividend upon the common stock," and that therefore the right of the preferred stockholder to dividends depended upon their declaration by the board of directors.

In the case at bar, however, the language used in the certificate is different, and seems to confer a right which did not exist in the case cited. The provision of the certificate is that the holder is entitled to dividends whenever in any year the net earnings, after payment of all interest charges, are sufficient for the payment thereof. This places the question of their rights beyond the discretion of the directors and gives the preferred stockholders a right to these profits as dividends, after payment of the interest charges mentioned in the certificate.

Under these circumstances, whether the directors declared a dividend of these profits arising in each year or not, the stockholders were entitled to the same, and perhaps by proper proceedings could have enforced payment of the same at the end of each year. Therefore, the right of the stockholders to these profits became fixed, and even if the directors made no division thereof, that right still existed and could not be taken away. The subsequent compliance by the directors with the terms of the contract in the declaration of the dividend, did not therefore infringe upon the provision of the certificate which made the dividend non-cumulative.

The only other question necessary to consider is that in regard to the extra allowance which was granted. There does· not seem to

have been a sufficient basis for the granting of this allowance. It is true that the plaintiff sought to set aside certain bonds, but what the value of these bonds were in the market we do not know, and in the absence of some proof in regard to the value of the subject-matter of the litigation, no ground for an allowance exists.

We think that the learned court below erred in the absence of such proof in granting the allowance.

The judgment appealed from dismissing the complaint must be affirmed with costs and the order granting the allowance reversed without costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed with costs and order granting allowance reversed without costs.